UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

JOSE MEJIA, 07-B-2418,

                                        Petitioner,

-vs-

PEOPLE OF THE STATE OF NEW YORK,

                                        Respondent.

_____

DECISION AND ORDER

6:17-CV-6362 CJS

INTRODUCTION

       Petitioner Jose Mejia ("Mejia" or "Petitioner") brings this *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his convictions in New York State Supreme Court, Erie County, for Murder in the Second Degree, Robbery in the First Degree, Criminal Possession of a Weapon in the Second Degree and Criminal Possession of Stolen Property in the Fifth Degree, for which he was sentenced principally to a term of imprisonment of 25 years to life.[1]   The Petition asserts three claims: 1) violation of Petitioner's right to confront witnesses; 2) conviction was against the weight of the evidence; and 3) violation of Petitioner's right to due process and a fair trial resulting from prosecutorial misconduct.  For the reasons explained below, the petition for a writ of habeas corpus is denied.

_____

[1] More specifically, Petitioner was "sentenced to indeterminate terms of twenty-five years to life for his murder in the second degree convictions, a determinate term of twenty-five years for his robbery conviction, fifteen years for his criminal possession of a weapon conviction, and a definite term of one year for his possession of stolen property conviction. A five-year term of post-release supervision was also imposed under all of the determinate terms." Respondent's Memo of Law at p. 3.

BACKGROUND

The evidence viewed in the light most-favorable to the prosecution indicates that late on the evening of June 21, 2006, Petitioner and Luis Hernandez ("Hernandez") decided to commit a robbery using a .22 caliber pistol borrowed from an acquaintance, Marc Staples ("Staples").  Petitioner and Hernandez chose as their victim Darryl Jones ("Jones"), who was walking to his girlfriend's house, carrying a backpack.  Petitioner and Hernandez demanded that Jones give them everything he had.  Jones handed over his cell phone but then tried to run away, at which point Petitioner knocked him to the ground and took his sneakers and wallet.  Jones then again tried to run, whereupon Petitioner shot him in the back once, killing him.  Petitioner and Hernandez fled on bicycles, taking the deceased's sneakers, wallet and cell phone.  A witness heard the shot and then heard a male voice say, "Come on, let's go."  The same witness came outside and saw Jones's backpack ripped open and its contents (Jones' clothing) scattered in the street.  The police arrived within minutes and found Jones's body face down in the grass, with no shoes. When Jones failed to arrive at his destination, his family and friends attempted to call his cell phone, and Petitioner and/or Hernandez answered, saying "nasty things" and eventually indicating that Jones was dead.

Within minutes after the shooting, Petitioner and Hernandez used Jones's phone to call a female acquaintance, Michelle Pizzaro ("Pizzaro").  Petitioner and Hernandez then went directly to Pizzaro's house, and Hernandez told Pizzaro that they had just robbed and shot a guy, and had taken his phone, wallet and sneakers.  Petitioner heard Hernandez's comments and did not dispute them.   The next day Petitioner and Hernandez returned the gun to Staples.

Hernandez continued to use Jones's phone for a few days until it broke, whereupon he threw the phone's parts into Pizzaro's yard, where they were later recovered by police.  Cell phone data led the police to PIzzaro's mother, who indicated that Pizzaro hung around with Petitioner and Hernandez.  Pizzaro then implicated Petitioner and Hernandez.  Police located Hernandez, who gave a statement that minimized his involvement and blamed Petitioner for the robbery and murder.  Police also recovered the gun that had been borrowed from Staples to commit the robbery.

When Petitioner was arrested, he was in possession of a pair of sneakers matching the brand, model and size of Jones's sneakers. (Incidentally, the sneakers were a smaller size than Petitioner usually wore.).  Evidently having realized that he was linked to the crime through phone records and the sneakers, Petitioner gave two statements to the police.  In the first statement, Petitioner indicated that he had borrowed a phone and sneakers from a guy named Darryl, who he knew from Erie County Community College. In the second statement, Petitioner admitted that he had robbed and shot Jones, though he claimed that the shooting was an accident.

Petitioner was indicted for Murder in the First Degree, Robbery in the First Degree, Criminal Possession of a Weapon in the Second Degree and Criminal Possession of Stolen Property in the Fifth Degree.  Because of his age Hernandez was not charged with First Degree Murder but he was charged with Murder in the Second Degree (felony murder) and various other crimes.

Hernandez agreed to plead guilty to manslaughter[2] and testified against Petitioner at trial.  Hernandez was extensively cross-examined by Petitioner's attorney.[3]  Staples

---

[2] Hernandez's plea agreement called for a sentence of between 15 and 20 years, and the state court sentenced him to 20 years.
[3] Petitioner's attorney at the first trial was Joseph Terranova, Esq.

and Pizzaro also testified.  Petitioner also testified, in narrative fashion, and indicated that he was innocent and that every witness who had testified at trial had lied.  With regard to the signed statements attributed to him by the police, Petitioner acknowledged that he had made the first statement but claimed that the second statement had been completely fabricated by the detectives who interviewed him.  However, later in his testimony, Plaintiff asserted that the police had fabricated both statements.[4]  With regard to his possession of the sneakers, Petitioner first testified that he had been given them by a guy named Darryl, then indicated that he had bought them from a guy named Zack, and finally asserted that both stories were true, in that he had been handed the shoes by Darryl but had paid Zack for them.

Petitioner was convicted after trial of all charges.  However, on appeal, the New York State Supreme Court, Appellate Division Fourth Department ("Appellate Division"), reversed the convictions and remanded for a new trial, finding that the trial court had erred in failing to suppress Petitioner's statements to the police. *See, generally, People v. Mejia*, 64 A.D.3d 1144, 882 N.Y.S.2d 621 (4th Dept. 2009).

Prior to the second trial, Hernandez, who had already received the benefit of his plea deal and was serving his 20-year sentence, indicated to the prosecutor that he was unwilling to testify again, arguing that his plea deal did not require him to testify at two trials.[5]  The trial court assigned an attorney for Hernandez, and following a hearing at which Hernandez reiterated that he was unwilling to testify, even under the threat of contempt, the court held Hernandez in contempt and found that he was "unavailable" to

---

[4] Trial Transcript at p. 884.
[5] See, 7/21/10 transcript at p. 3 ([PROSECUTOR:] [Hernandez] made it very clear to us that he does not believe his agreement includes the requirement that he testify at an additional trial – MR. HERNANDEZ: Yeah --."])

testify within the meaning of New York Criminal Procedure Law ("CPL") § 670.10(1) due to "incapacity," citing *People v. Muccia*, 139 A.D.2d 838, 839, 527 N.Y.S.2d 620 (3d Dept. 1988) ("A traditional hearsay exception for prior testimony of an unavailable witness is codified in CPL 670.10, which relevantly provides that the testimony of a witness at trial is admissible at a subsequent related proceeding which the witness is unable to attend because of 'incapacity.' Downs' refusal to testify constituted incapacity because County Court made sufficient good-faith efforts, including a threat to cite Downs for contempt, in order to induce him to testify in person.") (citations omitted) and *People v. Barber*, 2 A.D.3d 1290, 1291, 770 N.Y.S.2d 537, 538 (4th Dept. 2003) ("Evans testified against defendant at the first trial in exchange for a lenient sentence but refused to testify at the second trial, contending that his deal with the People did not require him to testify at more than one trial. Evans persisted in his refusal to testify despite the court's warning that he would be held in contempt and, indeed, he was held in contempt following a hearing. The court thereafter determined that Evans was unavailable to testify and permitted the People to present his testimony from the first trial in evidence pursuant to CPL 670.10(1). We conclude that the court properly admitted that testimony in evidence under the circumstances of this case.").

Following additional briefing and argument the trial court further ruled that the prosecution could read Hernandez's testimony from the first trial to the jury. In its written ruling on that point, the trial court discussed Hernandez's unavailability to testify, stating in pertinent part:

> The People contend that Mr. Hernandez refuses to testify, claiming that his agreement with the People did not require him to testify at more than one trial. On July 21, 2010, a hearing was conducted before this Court wherein Mr. Hernandez affirmed his refusal to testify in the new trial over the Court's

threat of contempt.   Due to his refusal this Court then declared Mr. Hernandez incapacitated and unavailable to testify in the new trial.   Mr. Hernandez was also found in contempt. CPL Section 670.10(1).[6]

Additionally, the trial court found that admission of Hernandez's prior trial testimony would not violate Petitioner's right to confrontation, since the testimony met the criteria for reliability and the direct examination and cross-examination of Hernandez at the first trial had not been restricted in any way. *Id.* at p. 168; *see also*, *id.* at p. 172 ("It is clear from a review of the transcript of the first trial that the Defendant's counsel at that time vigorously cross-examined Mr. Hernandez.").

Prior to trial, Petitioner's newly-retained counsel attempted to re-argue the court's rulings concerning Hernandez's unavailability and the use of his prior testimony, but the trial court adhered to its prior rulings, reiterating that Hernandez was unavailable to testify and that "the admission of the prior testimony in the second trial cannot be deemed to violate the Defendant's right to confrontation as the Defendant had a full opportunity to cross-examine Mr. Hernandez at the first trial. *Crawford v. Washington*, 541 U.S. 36." Decision dated 7/22/11.

Defense counsel also argued that the trial court should at least place Hernandez on the witness stand so that the jury could see and hear him refuse to testify.   Defense counsel insisted that the court should follow that procedure, so that the jury would glean that Hernandez's unavailability was not Petitioner's fault.[7]   The trial court denied the request.

---

[6] Exhibits to Petition, Appendix A to Petition for Certiorari at p. 166.

[7] *See, id.* at p. 180 ("There should be no question with respect to Mr. Hernandez's availability; rather the truth should be presented to the jury.  As Mr. Hernandez has refused to testify through no fault of the defendant, the jury should at least be apprised that the defendant has not caused the witness's unavailability.").

Petitioner did not testify at the second trial.  Petitioner also attempted to re-argue, before the new judge to whom the case had recently been reassigned, that the prosecution should not be permitted to read Hernandez's prior testimony into the record. Alternatively, Petitioner re-asserted that the court should place Hernandez, who had been subpoenaed to court by the defense, on the witness stand so that the prosecution could attempt to question him in the jury's presence.  The trial court denied the request and the prosecution read Hernandez's testimony to the jury.

During the trial, Jones's brother identified the sneakers that were in Petitioner's possession at the time of his arrest as having belonged to Jones, indicating that he was very familiar with the shoes because he had purchased them as part of a set, along with a matching jersey, hat and wristbands, that he had shared them with his late brother. Indeed, Jones' brother indicated that he often cleaned the sneakers and was familiar with the various creases and stains on them.  However, in his summation defense counsel attempted to cast doubt on that testimony by arguing that the particular brand and model of sneaker was popular and widely available.  For example, during his summation defense counsel stated,

> Nike isn't a Fortune 500 company for no reason.  They reproduce sneakers that came out 13 years ago and they still sell millions of them.  . . .  You know what I am getting at, okay.  Who knows how many thousands of young men or ladies across this area have those sneakers. . . .  [T]hese are common shoes that are used by young men, especially in the city."[8]

Defense counsel also suggested that the sneakers might not have been taken from Jones during the robbery, and that someone else might have come along later and stolen them from the body before the police arrived.  Presumably, defense counsel meant to imply

---

[8] Trial Tr. at pp. 685-686.

that Petitioner might have later obtained the sneakers from whoever took them from Jones' body, though he never conceded that the sneakers possessed by Petitioner were the same ones taken from Jones.

During the prosecutor's summation, he attempted to rebut those arguments by stating,

> And we have heard over the last week and again today, well, they [the sneakers] are a mass-produced product.  . . .  Maybe thousands of these around Western New York, who's to say. Or then we heard maybe they were stolen off [the victim's] feet [prior to the police arriving at the scene] because he was there forty to sixty minutes.  No he wasn't.  Well, which is it?  Because this morning we never heard him [defense counsel] say they were his.  But somehow, they made it to his [the defendant's] foyer, but really [the defendant wants you to believe] they aren't the same ones, you can't believe that [they're the victim's sneakers].  Well, that was all from that chair [defense counsel's chair].  From that chair [the witness chair] we heard and confirmed they were one hundred and fifty dollars a pair in 2006.  They aren't cheap.  One hundred fifty dollars a pair.  Not some Dollar Store item that everyone has and tosses aside after one walk through the mud.  Hardly.  I submit to you these Air Jordan [sneakers] are not as common as some in this courtroom need you to believe because, when they're found in your foyer only sixteen days after the owner is murdered and they are taken off his feet and your friend is saying you did it with him and others as well, well then, you better say something about why they are in your foyer.  Even if it's as silly as everyone has them or maybe someone stole them.

Trial Tr. at p. 720.

At the conclusion of the trial, Petitioner was acquitted of Murder in the First Degree and convicted of Murder in the Second Degree, Robbery in the First Degree, Criminal Possession of a Weapon in the Second Degree and Criminal Possession of Stolen Property in the Fifth Degree.  The trial court imposed the maximum sentence on Petitioner, citing the cruel nature of the crime.

On direct appeal to the Appellate Division, Petitioner raised the following arguments: 1) admission of Hernandez's testimony from the first trial violated Petitioner's

right to confrontation; 2) the trial court erred in allowing Pizarro to testify to Petitioner's tacit admission of guilt; 3) the verdict was against the weight of the evidence; 4) the prosecutor committed misconduct by allegedly commenting on Petitioner's silence; and 5) the sentence is harsh and excessive.  The Appellate Division denied the appeal.  With regard to the Confrontation Clause claim, the court stated, in pertinent part:

> We reject Defendant's contention that that the admission of the prior testimony violated his right of confrontation or CPL § 670.10(1).   The codefendant refused to testify based on his belief that his plea agreement with the People did not require him to testify twice, and his refusal to testify constituted incapacity inasmuch as the court threatened to hold the codefendant in contempt, and indeed did hold him in contempt, for his refusal to testify. Contrary to defendant's further contention, the court did not abuse its discretion in not allowing the codefendant to be called to the stand and refuse to testify in front of the jury.

*People v. Mejia*, 126 A.D.3d 1364, 1365, 6 N.Y.S.3d 813, 814 (2015).  With regard to the claim of prosecutorial misconduct, the Appellate Division held that the prosecutor's "better say something" statement was a proper comment on the defense summation and that in any event the statement was isolated and did not deprive Petitioner of a fair trial. *See, People v. Mejia*, 126 A.D.3d at 1365-66, 6 N.Y.S.3d at 815 (2015) ("Defendant contends that he was denied a fair trial based on a comment made by the prosecutor during summation. That comment, however, was a fair response to defense counsel's summation.  In any event, that single remark was isolated and not so egregious as to warrant a reversal.") (citations and internal quotation marks omitted).

The New York Court of Appeals denied Petitioner's application for leave to appeal, and the U.S. Supreme Court denied his petition for writ of certiorari.

As already mentioned, the instant petition asserts three claims.[9]  First, Petitioner contends that his right to confront witnesses was violated by the use of Hernandez's testimony from the first trial.  In that regard, Petitioner argues that Hernandez was not truly "unavailable" to testify, and that he was prejudiced by the jury's inability to observe Hernandez's demeanor.  Second, Petitioner maintains that the convictions were against the weight of the evidence, since, for example, there were "discrepancies and contradictions" between the testimony of Hernandez, Pizzaro and Staples.  And, third, Petitioner argues that his right to "a fair trial and due process" was violated by various comments from the prosecutor, including the "better say something" comment which Petitioner insists was a reference to his "silence while being taken into custody."

Respondent opposes the petition in its entirety, essentially indicating that the "weight of the evidence" claim is not cognizable in this proceeding and that the other two claims lack merit.  The Court has considered the parties' submissions and the entire record.

## DISCUSSION

Petitioner's *Pro Se* Status

Since Petitioner is proceeding *pro se*, the Court has construed his submissions liberally, "to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir.1994).

---

[9] The Petition also included a fourth claim, based on alleged ineffective assistance of trial counsel, that Petitioner acknowledged was unexhausted.  Petitioner withdrew that claim after the Court denied his request for stay and abeyance.

<u>Evidentiary Hearing Not Required</u>

Pursuant to Rule 8 of Rules Governing Habeas Corpus cases under Section 2254 in the United States District Courts and upon review of the answer, transcript and record, the Court determines that an evidentiary hearing is not required.

<u>Section 2254 Principles</u>

Petitioner brings this habeas corpus petition pursuant to 28 U.S.C. § 2254, and the general legal principles applicable to such a claim are well settled.

> As amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") and interpreted by the Supreme Court, 28 U.S.C. § 2254—the statutory provision authorizing federal courts to provide habeas corpus relief to prisoners in state custody—is "part of the basic structure of federal habeas jurisdiction, designed to confirm that state courts are the principal forum for asserting constitutional challenges to state convictions." *Harrington v. Richter*, 562 U.S. 86, 131 S.Ct. 770, 787, 178 L.Ed.2d 624 (2011). A number of requirements and doctrines . . . ensure the centrality of the state courts in this arena. First, the exhaustion requirement ensures that state prisoners present their constitutional claims to the state courts in the first instance. *See id.* (citing 28 U.S.C. § 2254(b)). Should the state court reject a federal claim on procedural grounds, the procedural default doctrine bars further federal review of the claim, subject to certain well-established exceptions. *See generally Wainwright v. Sykes*, 433 U.S. 72, 82–84, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). If the state court denies a federal claim on the merits, then the provisions of § 2254(d) come into play and prohibit federal habeas relief unless the state court's decision was either: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law," or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court." 28 U.S.C. § 2254(d)(1)-(2). Finally, when conducting its review under § 2254(d), the federal court is generally confined to the record before the state court that adjudicated the claim. *See Cullen v. Pinholster*, —— U.S. ——, 131 S.Ct. 1388, 1398–99, 179 L.Ed.2d 557 (2011).

*Jackson v. Conway*, 763 F.3d 115, 132 (2d Cir. 2014).   As just mentioned, regarding claims that were decided on the merits by state courts,

a federal court may grant habeas corpus relief to a state prisoner on a claim that was adjudicated on the merits in state court only if it concludes that the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)–(2).

A state court decision is contrary to clearly established Federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to the Supreme Court's result.

A state court decision involves an unreasonable application of clearly established Federal law when the state court correctly identifies the governing legal principle but unreasonably applies it to the facts of the particular case.  To meet that standard, the state court's decision must be so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.  It is well established in this circuit that the objectively unreasonable standard of § 2254(d)(1) means that a petitioner must identify some increment of incorrectness beyond error in order to obtain habeas relief.

*Santana v. Capra*, No. 15-CV-1818 (JGK), 2018 WL 369773, at *7–8 (S.D.N.Y. Jan. 11, 2018) (Koeltl, J.) (citations and internal quotation marks omitted).

<u>Unexhausted and Procedurally Defaulted Claims</u>

Respondent maintains that Petitioner's "weight of the evidence" argument is exhausted but not cognizable in a § 2254 habeas petition.  Respondent indicates, however, that to the extent Petitioner might to attempt to instead argue that the evidence was *legally insufficient* to support his convictions, such an argument would be unexhausted since it was not made to the state courts.

The legal principles concerning the need to exhaust claims before raising them in

a § 2254 petition are clear:

> If anything is settled in habeas corpus jurisprudence, it is that a federal court may not grant the habeas petition of a state prisoner "unless it appears that the applicant has exhausted the remedies available in the courts of the State; or that there is either an absence of available State corrective process; or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner." 28 U.S.C. § 2254(b)(1). To satisfy § 2254's exhaustion requirement, a petitioner must present the substance of "the same federal constitutional claim[s] that he now urges upon the federal courts," *Turner v. Artuz*, 262 F.3d 118, 123-24 (2d Cir.2001), "to the highest court in the pertinent state," *Pesina v. Johnson*, 913 F.2d 53, 54 (2d Cir.1990).
>
> When a claim has never been presented to a state court, a federal court may theoretically find that there is an "absence of available State corrective process" under § 2254(b)(1)(B)(i) if it is clear that the unexhausted claim is procedurally barred by state law and, as such, its presentation in the state forum would be futile. In such a case the habeas court theoretically has the power to deem the claim exhausted. *Reyes v. Keane*, 118 F.3d 136, 139 (2d Cir.1997). This apparent salve, however, proves to be cold comfort to most petitioners because it has been held that when "the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred," federal habeas courts also must deem the claims procedurally defaulted. *Coleman v. Thompson*, 501 U.S. 722, 735 n. 1, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991).
>
>                          \*\*\*
>
> Dismissal for a procedural default is regarded as a disposition of the habeas claim on the merits. . . . For a procedurally defaulted claim to escape this fate, the petitioner must show cause for the default and prejudice, or demonstrate that failure to consider the claim will result in a miscarriage of justice (*i.e.*, the petitioner is actually innocent). *Coleman*, 501 U.S. at 748-50, 111 S.Ct. 2546 (1991).

*Aparicio v. Artuz*, 269 F.3d 78, 89–90 (2d Cir. 2001).

      Where a claim is unexhausted but not procedurally barred, meaning that it could

still be raised in state court, a district court may stay the action to allow the petitioner to

exhaust the claim if, *inter alia*, it is not plainly meritless. *See, Woodard v. Chappius*, 631 F. App'x 65, 66 (2d Cir. 2016) ("Under *Rhines v. Weber*, 544 U.S. 269, 125 S.Ct. 1528, 161 L.Ed.2d 440 (2005), a district court abuses its discretion in denying a stay to exhaust claims in a mixed petition if the unexhausted claims are not plainly meritless, if the petitioner has good cause for failing to exhaust, and if the petitioner did not engage in abusive or dilatory litigation tactics. *Id.* at 277–78, 125 S.Ct. 1528.").  However, where a stay is not appropriate, the district court may deny the unexhausted claim if it is meritless. *See, e.g., Wilson v. Graham*, No. 9:17-CV-0863 (BKS), 2018 WL 6001018, at *6 (N.D.N.Y. Nov. 15, 2018) ("A habeas court may, however, deny on the merits a habeas petition containing unexhausted claims if those claims are plainly meritless.").

    In the instant case, if Petitioner attempted to argue that his conviction was unconstitutional due to the legal insufficiency of the evidence, the claim would be both unexhausted and procedurally defaulted.   That is because Petitioner did not make that argument to the state courts, and he cannot do so now since the claim could have been raised in his direct appeal.   In sum, the claim would be procedurally defaulted under state law and procedurally barred here, and no exception would apply.[10]   However, even liberally construing the Petition, it does not appear to be making a legal sufficiency argument.[11] Rather, Petitioner has  argued only that his conviction was against the weight of the evidence, citing alleged inconsistencies between the testimony of Hernandez, Pizzaro and Staples.[12]   Consequently, the Court finds that Respondent's exhaustion

---

[10] Petitioner has not attempted to show cause and prejudice or actual innocence, nor does the record suggest that he could do so.

[11] As to this point, the Court additionally notes that Petitioner did not file a reply.

[12] The Court notes that defense counsel explored these discrepancies on cross-examination and argued them to the jury.

argument as to this point is moot, inasmuch as it is directed at an argument Petitioner is not making.[13]

However, other aspects of the petition are unexhausted.  Specifically, Petitioner's claim that he was denied a fair trial and due process based on prosecutorial misconduct relies on three alleged statements by the prosecutor: First, Petitioner maintains that it was improper for the prosecutor to say, during his opening, that he was going to show that the sneakers found in Petitioner's possession were the same ones stolen from Jones, since the prosecutor never introduced DNA evidence on that point; next, Petitioner contends that it was improper for the prosecutor to say, during his summation, "I submit to you these Air Jordan [sneakers taken from the victim] are not as common as some in this courtroom need you to believe because, when they're found in your foyer only sixteen days after the owner is murdered and they are taken off his feet and your friend [Hernandez] is saying you did it with him and others as well, well then, you better say something about why they are in your foyer," since that statement referred to Peititoner's right to remain silent; and, finally, Petitioner asserts that it was improper and misleading for the prosecutor to say, during his summation, that police had recovered the murder weapon, since, for example, no scientific evidence was presented indicating that the bullet taken from Jones's body was fired by the gun that was recovered from Staples.  Of these three alleged instances of prosecutorial misconduct, only the second one was raised

---

[13] The Court notes that a legal *sufficiency* argument would also lack merit, since the evidence viewed in the light most-favorable to the prosecution was clearly sufficient to allow a rational trier of fact to find Petitioner guilty beyond a reasonable doubt of the crimes for which he was convicted under New York law. *See, Gutierrez v. Smith*, 702 F.3d 103, 113 (2d Cir. 2012) ("When reviewing appeals challenging the sufficiency of the evidence supporting a state-court criminal conviction . . . we review the decision of the state court under the federal sufficiency standard set forth by the Supreme Court in *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). *See Epps v. Poole*, 687 F.3d 46, 50 (2d Cir.2012). The relevant question under *Jackson* is whether, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319, 99 S.Ct. 2781.").

before the state courts.  The first and third instances of alleged prosecutorial misconduct are unexhausted, procedurally barred and procedurally defaulted, and no exception applies.[14]  Consequently, those two aspects of Petitioner's prosecutorial misconduct/fair trial/due process claim are denied on that basis.[15]  The Court will discuss the exhausted aspect of that claim below.

<u>Non-Cognizable Claims</u>

Respondent next maintains that Petitioner's "weight of the evidence" claim is "not cognizable" in a § 2254 habeas proceeding.  The Court agrees.

"A claim that a state conviction was obtained in violation of state law is not cognizable in the federal court." *Howard v. Walker*, 406 F.3d 114, 121 (2d Cir. 2005) (citing *Estelle v. McGuire*, 502 U.S. 62, 68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991) and *Dunnigan v. Keane*, 137 F.3d 117, 125 (2d Cir.1998)); *see also, Guerrero v. LaManna*, 325 F. Supp. 3d 476, 483 (S.D.N.Y. 2018) ("The role of federal courts reviewing habeas petitions is not to re-examine the determinations of state courts on state law issues, but only to examine federal constitutional or statutory claims. 28 U.S.C. § 2254(a); *see Estelle v. McGuire*, 502 U.S. 62, 67-68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991). Federal courts deciding habeas petitions do not serve as appellate courts to review state court decisions of state law claims. Their purpose instead is to review whether the circumstances surrounding the petitioner's detention 'violate fundamental liberties of the person, safeguarded against state action by the Federal Constitution.' *Townsend v. Sain*, 372 U.S. 293, 311-312, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963). Habeas petitions may not simply

---

[14] Again, Petitioner has not attempted to show cause and prejudice or actual innocence, nor does the record suggest that he could do so.

[15] In any event, those two aspects of the claim plainly lack merit as the prosecutor's statements concerning those points were not improper.

repackage state law claims, which have previously been found to be meritless, in order to obtain review. *DiGuglielmo v. Smith*, 366 F.3d 130, 136 (2d Cir. 2004).").

As Respondent correctly points out, a claim that a conviction was against the weight of the evidence is a state-law argument that is not cognizable in a federal § 2254 habeas action. *See, McKinnon v. Superintendent, Great Meadow Corr. Facility*, 422 F. App'x 69, 75 (2d Cir. 2011) ("[T]he argument that a verdict is against the weight of the evidence states a claim under state law, which is not cognizable on habeas corpus, *see, e.g., Correa v. Duncan*, 172 F.Supp.2d 378, 381 (E.D.N.Y.2001), *Douglas v. Portuondo*, 232 F.Supp.2d 106, 116 (S.D.N.Y.2002); *see also Estelle*, 502 U.S. at 67–68, 112 S.Ct. 475, and as a matter of federal constitutional law a jury's verdict may only be overturned if the evidence is insufficient to permit any rational juror to find guilt beyond a reasonable doubt, *Jackson v. Virginia*, 443 U.S. 307, 324, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), *Policano v. Herbert*, 507 F.3d 111, 116 (2d Cir.2007)."); *see also*, *Blackshear v. Artus*, No. 917CV143MADDJS, 2019 WL 6837719, at *3 (N.D.N.Y. Dec. 16, 2019) ("Review of a conviction as against the 'weight of the evidence' is a product of New York state statute and, therefore, merely a state-law issue for which no cognizable federal issue is presented.").

Consequently, Petitioner's "weight of the evidence" argument is not cognizable in this action and is denied.

<u>The Remaining Claims, Although Exhausted and Cognizable, Lack Merit</u>

*Right to Confront Witnesses*

Petitioner contends that his right to confront witnesses was denied by the use of Hernandez's testimony from the first trial. In this regard, Petitioner contends that although Hernandez was cross-examined at the first trial, he might have testified differently at the

second trial, and that the use of the prior testimony deprived the jury of the opportunity to observe Hernandez's demeanor.  Petitioner further contends that Hernandez was not actually "unavailable" to testify, since the prosecution never offered him immunity to testify.  Finally, Petitioner contends that before using the prior testimony the trial court should have at least placed Hernandez on the stand so that the jury could see him refuse to testify.

Criminal defendants have a Sixth Amendment right to confront the witnesses against them, with certain exceptions:

> "The Sixth Amendment guarantees every criminal defendant the right "to be confronted with the witnesses against him." U.S. Const. amend. VI. In *Crawford v. Washington*, the Supreme Court interpreted this Clause to bar the admission at trial of a witness's "testimonial evidence"—which includes "at a minimum" his "prior testimony ... before a grand jury"—*unless the witness is unavailable and the defendant has been afforded a prior opportunity for cross-examination*. 541 U.S. 36, 68, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).

*Chrysler v. Guiney*, 806 F.3d 104, 118 (2d Cir. 2015) (emphasis added).

> [A] witness is not 'unavailable' for purposes of the confrontation requirement unless the prosecutorial authorities have made a good-faith effort to obtain his presence at trial.
>
> ***
>
> The lengths to which the prosecution must go to produce a witness . . . is a question of reasonableness.

*Hardy v. Cross*, 565 U.S. 65, 69–70, 132 S. Ct. 490, 493–94, 181 L. Ed. 2d 468 (2011) (citations and internal quotation marks omitted).

Here, the Court liberally construes the Petition to allege that the trial court's finding that Hernandez was "unavailable" to testify, was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of

the United States or was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. In particular, Petitioner maintains that the finding of "unavailability" was incorrect since the prosecution did not make a reasonable good-faith effort to get Hernandez to testify at the second trial. As proof, Petitioner contends that the prosecutor never offered immunity to Hernandez.

However, this argument lacks merit for various reasons. To begin with, Petitioner's contention that Hernandez was not "unavailable" to testify is incorrect, since Hernandez invoked his 5th Amendment privilege and refused to testify despite being held in contempt. *See, Latine v. Mann*, 25 F.3d 1162, 1166 (2d Cir. 1994) ("A declarant is unavailable for purposes of Confrontation Clause analysis if he invokes his Fifth Amendment privilege against self-incrimination and refuses to testify at trial."); *see also, Ross v. Dist. Attorney of the Cty. of Allegheny*, 672 F.3d 198, 206 (3d Cir. 2012) ("The Confrontation Clause does not require a witness to face the threat of sanctions in order to be rendered unavailable. A witness is unavailable for Confrontation Clause purposes when he or she refuses to testify, regardless of whether the refusal is in response to an order to testify under threat of sanctions.")

Moreover, the state court's determination that Hernandez was unavailable to testify was not unreasonable under the circumstances. *See, Hardy v. Cross*, 565 U.S. at 71–72, 132 S. Ct. at 495 ("[T]he Sixth Amendment does not require the prosecution to exhaust every avenue of inquiry, no matter how unpromising. And, more to the point, the deferential standard of review set out in 28 U.S.C. § 2254(d) does not permit a federal court to overturn a state court's decision on the question of unavailability merely because the federal court identifies additional steps that might have been taken. Under AEDPA, if the state-court decision was reasonable, it cannot be disturbed."); *see also, Green v.*

*MacLaren*, No. 17-1249, 2017 WL 3973956, at *2 (6th Cir. Aug. 2, 2017) ("Green argues that the trial court's decision violated his right to confront his witnesses. The Confrontation Clause prohibits the admission of testimonial statements by a non-testifying witness unless the witness is unavailable and the defendant had a prior opportunity for cross-examination. *Crawford v. Washington*, 541 U.S. 36, 68 (2004). It is undisputed that Lewis provided testimonial statements at Green's first trial and that Green had an opportunity to cross-examine him. Nonetheless, Green contends that Lewis was not truly unavailable to testify at his second trial. However, a witness is unavailable for full and effective cross-examination when he refuses to testify, even when the refusal is punishable as contempt. Lewis made it clear to the trial court that he was exercising his Fifth Amendment right not to testify. Even if it was not proper for Lewis to invoke his right in this context since his pending murder charge was unrelated to Green's case, it appears that any warning by the court to hold Lewis in contempt would have been ineffective. Lewis already was incarcerated and facing life imprisonment if convicted of the murder charge. Further, this court may not overturn a state court's determination of unavailability merely because it can identify additional steps that the state court may have taken. *See Hardy v. Cross*, 565 U.S. 65, 71 (2011).").

Petitioner's contention that the prosecutor failed to act in good faith by not offering immunity to Hernandez also lacks merit, since the prosecutor had no reason to offer immunity to a witness who had already clearly indicated to the court that he was not going to testify under any circumstances because he did not believe that his plea agreement required him to do so. *See, e.g., Robinson v. Conway*, No. 05-CV-0542 VEB, 2010 WL 3894989, at *9 (W.D.N.Y. Sept. 30, 2010) ("Scott was unavailable; his intention was to

refuse to testify again under any circumstances. The issue of immunity thus never had to be reached by the prosecutor or the trial court.").

To the extent Petitioner may be arguing that a witness who refuses to testify can never be declared "unavailable" for purposes of the Confrontation Clause unless he is first offered immunity, such that the prosecutor was required to offer immunity to Hernandez, he is incorrect:

> The established content of the Sixth Amendment does not support a claim for defense witness immunity. Traditionally, the Sixth Amendment's Compulsory Process Clause gives the defendant the right to bring his witness to court and have the witness's non-privileged testimony heard, but does not carry with it the additional right to displace a proper claim of privilege, including the privilege against self-incrimination. While the prosecutor may not prevent or discourage a defense witness from testifying, it is difficult to see how the Sixth Amendment of its own force places upon either the prosecutor or the court any affirmative obligation to secure testimony from a defense witness by replacing the protection of the self-incrimination privilege with a grant of use immunity.

*United States v. Turkish*, 623 F.2d 769, 773–74 (2d Cir. 1980) (citations omitted).[16]  Nor does the record otherwise indicate that the prosecutor acted unreasonably, or that he failed to make a good-faith effort to get Hernandez to testify at trial.

Petitioner further maintains that his Confrontation Clause rights were violated when the trial court declined to place Hernandez before the jury solely for the purpose of having him refuse to testify.  This claim also lacks merit. *See, e.g., United States v. George*, 778 F.2d 556, 563 (10th Cir. 1985) ("The trial court correctly permitted the invocation of the Fifth Amendment privilege by Kenneth George outside the hearing of the jury, and

---

[16] *See also*,  Thomas G. Stacy, "The Constitution in Conflict: Espionage Prosecutions, the Right to Present A Defense, and the State Secrets Privilege," 58 U. Colo. L. Rev. 177, 225 (1987) ("Courts have been virtually unanimous in holding that, at least in the absence of prosecutorial misconduct, neither courts nor prosecutors have a constitutional obligation to immunize witnesses who can provide testimony exculpating a defendant.").

defendant-appellant's right of confrontation under the Sixth Amendment was not thereby violated."); *see also, United States v. Myerson*, 18 F.3d 153, 158 (2d Cir. 1994) ("[T]he district court properly rejected Myerson's attempts to call Cooper solely for the purpose of having the jury hear his invocation of the privilege.").

Finally, Petitioner contends that it violated his Confrontation Clause rights to use Hernandez's prior testimony, since Hernandez might have testified differently at the second trial.   However, this argument lacks merit, since the trial court is not required to consider how the declarant might testify at the second trial.  Rather, as discussed earlier, use of the prior testimony comports with the Confrontation Clause so long as the witness is unavailable and the defendant has been afforded a prior opportunity for cross-examination.  Those requirements were met here.

For all these reasons, the Confrontation Clause claim is denied.

### Right to Fair Trial/Due Process

Finally, Petitioner contends that his rights to a fair trial and due process were violated by the prosecutor's summation which included the words, "you better say something."  In particular, Petitioner alleges that those words "referred to [his] silence while being taken into custody."  Respondent maintains that this claim lacks merit, and the Court again agrees.

Petitioner's argument on this point can be construed as raising a claim relating to his 5th Amendment rights to a fair trial and to remain silent.  The legal principles applicable to such claims are well settled:

> The Supreme Court has instructed that habeas relief is appropriate based on improper prosecutorial comments in summation only where the prosecutor's comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477

U.S. 168, 181, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986). We have held that "[t]he habeas court must consider the record as a whole when making this determination, because even a prosecutor's inappropriate or erroneous comments or conduct may not be sufficient to undermine the fairness of the proceedings when viewed in context." *Jackson*, 763 F.3d at 146. This standard is highly general, such that a wide range of state court applications of the standard must be considered reasonable. *Id.* at 135.

*Griggs v. Lempke*, 797 F. App'x 612, 616 (2d Cir. 2020).  At the same time, however,

[i]t is appropriate, on summation, to suggest inferences that could be drawn from facts in evidence and draw juror's attention to relevant factors in assessing witness credibility." *Cooper v. Costello*, No. 93-CV-5670, 1996 WL 1088929, at *4 (E.D.N.Y. July 23, 1996) (citing People v. Collins, 72 A.D.2d 431, 437-38, 424 N.Y.S.2d 954, 985 (4th Dept. 1980)). Additionally, the prosecution is permitted to rebut arguments raised during a defendant's summation, "'even to the extent of permitting the prosecutor to inject his view of the facts to counter the defense counsel's view of the facts.'" *Readdon v. Senkowski*, No. 96-CV-4722, 1998 WL 720682, at *4 (S.D.N.Y. Oct. 13, 1998) (quoting *Orr v. Schaeffer*, 460 F. Supp. 964, 967 (S.D.N.Y. 1978)). "Where a prosecutor's statement is responsive to comments made by defense counsel, the prejudicial effect of such objectionable statements is diminished." *Pilgrim v. Keane*, No. 97-CV-2148, 2000 WL 1772653 at *3 (E.D.N.Y. Nov. 15, 2000) (citations omitted).

*Duren v. Lamanna*, No. 18-CV-7218(JS), 2020 WL 509179, at *16 (E.D.N.Y. Jan. 30, 2020).

With regard to prosecutorial misconduct specifically involving comments on the accused's right to remain silent, the legal principles are similarly well settled:

The Fifth Amendment protects individuals from self-incrimination. U.S. Const. Amend. V. It is a long-standing principle that prosecutors may not comment on a criminal defendant's silence or instruct a jury to infer that "such silence is evidence of guilt." *See Griffin v. California*, 380 U.S. 609, 615, 85 S. Ct. 1229, 1233, 14 L. Ed. 2d 106 (1965). "The test governing whether a prosecutor's statements amount to an improper comment on the accused's silence in violation of the Fifth Amendment looks at the statements in context and examines whether they 'naturally and necessarily' would be interpreted by the jury as a comment on the

defendant's failure to testify." *U.S. Knoll*, 16 F.3d 1313, 1323 (2d Cir. 1995); *see also United States v. Bubar*, 567 F.2d 192, 199 (2d Cir.), *cert. denied*, 434 U.S. 872, 98 S. Ct. 217, 54 L. Ed. 2d 151 (1977).

*Duren v. Lamanna*, 2020 WL 509179, at *17; *see also*, *Griggs v. Lempke*, 797 F. App'x 612, 617 ("The Fifth Amendment ... forbids ... comment by the prosecution on the accused's silence." *Griffin v. California*, 380 U.S. 609, 615, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965). Such comments, however, are reviewed for harmless error. *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).").

Here, as discussed earlier, Petitioner focuses on the words "you better say something," which were part of the larger statement,

> I submit to you these Air Jordan are not as common as some in this courtroom need you to believe because, when they're found in your foyer only sixteen days after the owner is murdered and they are taken off his feet and your friend is saying you did it with him and others as well, well then, you better say something about why they are in your foyer. Even if it's as silly as everyone has them or maybe someone stole them.

The state court rejected Petitioner's argument that this statement referred to his silence when arrested, finding instead that it was "a fair response to defense counsel's summation," and, alternatively, that the "single remark was isolated and not so egregious as to warrant a reversal." *People v. Mejia*, 126 A.D.3d at 1365-66.

The state court's determination was not "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," neither was it "contrary to," nor did it "involve an unreasonable application of," "clearly established Federal law, as determined by the Supreme Court of the United States." Viewed in context, the statement was not so unfair as to deny due process, nor did it amount to an improper comment on the accused's silence in violation of the Fifth Amendment since it

would not "naturally and necessarily" have been interpreted by the jury as a comment on the defendant's failure to testify.  Instead, the statement was clearly a response to specific arguments made during defense counsel's summation minutes earlier.  The statement was directed at what defense counsel said, not at what Petitioner did not say. Consequently, the claim is denied.

CONCLUSION

The application under 28 U.S.C. § 2254 is denied.  The Clerk of the Court is directed to close this case.  Pursuant to 28 U.S.C. § 2253, the Court declines to issue a certificate of appealability, since Petitioner has not made a substantial showing of the denial of a constitutional right.  The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith and leave to appeal to the Court of Appeals as a poor person is denied. *Coppedge v. United States*, 369 U.S. 438 (1962).  Further requests to proceed on appeal *in forma pauperis* should be directed on motion to the United States Court of Appeals for the Second Circuit in accordance with Rule 24 of the Federal Rules of Appellate Procedure.

So Ordered.

Dated:       Rochester, New York
             February 5, 2021

ENTER:

CHARLES J. SIRAGUSA
United States District Judge